## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CHRISTOPHER PAUL,** | : | **No. 3:14CV1960 (WWE)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **EDALIZ RAMOS,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This case concerns alleged violation of the plaintiff Christopher Paul's Fourth and Fourteenth Amendment rights based upon an asserted malicious prosecution by defendant Edaliz Ramos.  Plaintiff also claims that defendant intentionally caused him to suffer emotional distress.  Defendant has filed a motion for summary judgment.  For the following reasons, the motion for summary judgment will be granted.

## Background

In support of the motion for summary judgment, the parties have submitted statements of undisputed facts in compliance with Local Rule 56(a)1, exhibits and affidavits.  These materials reflect that the following facts are undisputed.

On November 29, 2009, plaintiff was arrested for kidnaping of a minor relative in Massachusetts.  The Westborough District Court placed plaintiff on probation for a period of one year ending in November 2013.  As a condition of probation, plaintiff was required to provide his probation officer with verification that he did not possess any firearms, if necessary.

Plaintiff applied for transfer of his probation supervision to Connecticut where he

1

resided.  The transfer was accepted.

On November 26, 2012, plaintiff reported to defendant Probation Officer Edaliz Ramos for intake.  Plaintiff refused to complete a substance abuse survey.  After plaintiff was informed that he would be referred for a Mental Health Evaluation, he indicated that he would only go to a mental health provider who would "not make him look bad."

On November 28, 2012, Probation Supervisor Green determined that plaintiff should be supervised as a Mental Health Client.  Probation Officer Ramos informed plaintiff that he needed to obtain a mental health evaluation within two weeks and provide verification that he was no longer in possession of a firearm.

On December 4, 2012, plaintiff reported to Ramos for an office visit. Ramos informed plaintiff that if he failed to abide by the conditions of probation, his case would be sent back to Massachusetts.  Ramos asked plaintiff about a firearm registered to him.  He responded that it was a "dead issue."  Ramos then told plaintiff that he needed to get verification from the state police that he was no longer in possession of the firearm registered to him.

Plaintiff also reported that he had had five mental health evaluations, although he refused to provide any such evaluation to Ramos and he refused to provide Ramos with a release so that she could obtain a copy from his provider.

On December 5, 2012, Ramos sent an offender violation report to Massachusetts regarding plaintiff's possible possession of a firearm and his refusal to attend a mental health evaluation or provide a medical release to Ramos.

On December 7, 2012, the Westborough District Court amended plaintiff

2

conditions of probation to provide that plaintiff submit to a mental health evaluation and verify by December 12, 2012, the status of any firearm he may own or have owned.

On December 11, 2012, plaintiff had an office visit with Ramos, at which time he refused to call a doctor for a mental health evaluation and refused to sign a release. He was informed that he needed to comply with the conditions of probation regarding his firearm verification by December 12, 2012.

On December 12, 2012, the West Hartford police reported that they had confiscated 16 firearms from plaintiff in 2009. However, the firearm that appeared as registered to plaintiff was not included in the group of firearms confiscated in 2009.

That day, Ramos sent a second offender violation report to Massachusetts due to plaintiff's failure to comply with the conditions of his probation regarding the mental health evaluation and verification of his firearm status as of December 12, 2012.

On December 13, 2012, Ramos sent a third offender violation report to Massachusetts based on plaintiff continued noncompliance with the probation conditions. Pursuant to an interstate compact policy, a third offender violation report results in the sending state retaking the individual on probation.

On December 18, 2012, plaintiff was handcuffed and taken into custody. Ramos's supervision of plaintiff ceased on December 21, 2012.

On February 11, 2013, the Westborough District Court placed plaintiff on a year long probation period ending on February 11, 2014. As a condition of probation, plaintiff was required to contact a mental health provider to obtain a mental health evaluation and verify his verify his weapon disposal within two weeks of February 11, 2013; plaintiff was also required to sign a medical release so that probation could verify

3

his medical compliance.

Plaintiff provided a mental health evaluation to his probation officer in March 2013.  In October 2013, The Westborough District Court terminated plaintiff's probation.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.  The mere of existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  See Patterson v.

4

County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

Constitutional Violations

Plaintiff alleges violation of his Fourth and Fourteenth Amendment rights on grounds that he was the subject of a malicious prosecution.  Defendant maintains that plaintiff cannot establish his claim of malicious prosecution and that qualified immunity shields defendant from liability.

To prevail on a Section 1983 claim of malicious prosecution, plaintiff must show a violation of his rights under the Fourth Amendment and the elements of malicious prosecution claim under state law.  Manganiello v. City of New York, 612 F.3d 149, 160-161 (2d Cir. 2010).  In Connecticut, the elements of a malicious prosecution claim require that (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; and (3) the defendant acted with malice for a purpose other than that of bringing an offender to justice.  Turner v. Boyle, 116 F. Supp. 3d 58, 84 (D. Conn. 2015).

The undisputed facts demonstrate that summary judgment should be granted on the ground of qualified immunity.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified

5

immunity is broad.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The test for qualified immunity is twofold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to the plaintiff,  the facts demonstrate the official's violation of one of the plaintiff's constitutional rights. The next question is whether that constitutional right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205.   Qualified immunity applies if the officer's mistake as to what the law requires is reasonable.  Id.  Qualified immunity does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation.  Malley, 475 U.S. at 341.  Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree.  Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).  Even assuming that defendant's conduct violated a clearly established law, it was objectively reasonable for defendant to believe that her conduct did not violate the law.  She sent the three offender violation reports that resulted in

plaintiff being taken into custody on the basis of plaintiff's continued failure to comply with the conditions of probation.  Plaintiff maintains that plaintiff should have inquired further about his firearms with the West Hartford or Connecticut State police.  However, the record adduced does not demonstrate that defendant's failure to make such inquiry was improper or that the decision to send the three offender reports to Massachusetts due to his noncompliance was unreasonable.  Accordingly, the Court will grant summary judgment in defendant's favor on the Constitutional violations.

State Law Claims

To the extent that plaintiff asserts a claim of intentional infliction of emotional distress or any other state law claim, the Court will decline to exercise supplemental jurisdiction pursuant to jurisdiction over the such state law claims pursuant to 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment [doc. #27] is GRANTED.   The state law claims are dismissed without prejudice. The clerk is instructed to close this case.

Dated this ___17th___ day of October, 2016 at Bridgeport, Connecticut.


/s/Warren W. Eginton
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE